812 A.2d 1138 (2003)
356 N.J. Super. 406
Wasel RISKO, Administrator of the Estate of Dolores Risko, and Administrator ad Prosequendum for Dolores Risko, deceased, and next of kin of Dolores Risko, individually and per quod, Plaintiff-Appellant,
v.
Rocco Gerard CIOCCA, M.D.; F. Weinberg, M.D.; Dr. Graham, M.D.; Dr. Crowley, M.D.; Dr. Neckman, M.D.; University of Medicine and Dentistry of the State Of New Jersey (Robert Wood Johnson University Hospital), Defendants-Respondents, and
Dominick Boli, M.D., and Todd Stefan, M.D., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 2002.
Decided January 7, 2003.
*1139 Richard W. Swarbrick argued the cause for appellant.
Jay Scott MacNeill, Roseland, argued the cause for respondents Rocco Gerard Ciocca, M.D., Alan Graham, M.D., J. Gerard Crowley, M.D., and Gary B. Neckman, M.D. and the University of Medicine and Dentistry of the State of New Jersey (Post, Polak, Goodsell, MacNeil & Strauchler, attorneys; Mr. MacNeil, of counsel; Joseph S. Ugarte, on the brief).
Jeremy P. Cooley, Lawrenceville, argued the cause for respondent Frederick Weinberg, M.D. (Lenox, Socey, Wilgus, Formidoni, Brown, Giordano & Casey, attorneys; Mr. Cooley, of counsel; Jennifer E. Troast, on the brief).
Before Judges STERN, COBURN and ALLEY.
The opinion of the court was delivered by STERN, P.J.A.D.
Plaintiff appeals from a judgment resulting from orders of May 25, 2001 and June 22, 2001 dismissing the complaint against defendants for failure to file an affidavit of merit and an order of August 3, 2002 denying reconsideration. Plaintiff argues that the orders must be "vacated" because the principle of res ipsa loqui and the "common knowledge" doctrine excuse the need for an affidavit, and because no affidavit "is needed in cases where the issues are intentional torts such as outrage, fraud, deceit, misrepresentation and lack of informed consent." We affirm the judgment.
The facts on which plaintiff relies includes the following. On October 12, 1998, plaintiff's wife, Dolores Risko (hereinafter "decedent") was admitted to the defendant Robert Wood Johnson University Hospital with a diagnosis of right carotid stenosis, an abnormal narrowing of the carotid artery. She was sixty-four years old and *1140 had a history of hypertension and coronary artery disease. On October 16, 1998, defendant Dr. Rocco Ciocca performed a right carotid endarterectomy with assistance from defendants Doctors Dominick Boli and Todd Stefan. Decedent was discharged on October 19, 1998. The discharge summary, dictated by Boli, concluded:
The patient is being discharged to home today on 10/19/98 with instructions to followup with Dr. Ciocca in one week, and with Dr. Weinberg as well, as an outpatient. Stool guaiacs were done which revealed no evidence of blood in the stool.
Defendant Frederick Weinberg was decedent's outpatient cardiologist who referred her for the surgery, but he did not participate in performing the endarterectomy. It is alleged that Weinberg was "the attending physician for the [decedent] in the hospitalization from 10/12/98-10/19/98 where she was allowed to be discharged with a leaking endarterectomy." Plaintiff asserts that the "leaking endarterectomy" was the cause of decedent's "stroke and subsequent history" resulting in her death.
Within hours of her discharge on October 19, 1998, decedent called for an ambulance when her neck began to swell, and on the way to the hospital she went into cardiac arrest. At the hospital defendant Dr. J. Gerard Crowley reopened the site of the endarterectomy and evacuated an "expanding hematoma," which, according to the operative report, was not present at the time of her discharge.
After the procedure was completed, decedent was taken to the "surgical intensive care unit where she remained for the next month." At some time during the stay she suffered a "right hemispheric stroke." She gradually improved and was discharged "to rehab" on December 4, 1998. While she was readmitted on October 19 for "hematoma status post carotid endarterectomy," her diagnosis at the time of discharge was:
Hematoma, status post carotid endarterectomy. Leaking carotid endarterectomy. Right neck hematoma. Respiratory failure. Subendocardial infarction. Central nervous system complications. Right parieto-occipital cerebrovascular accident. Congestive heart failure. Hypertension. Temporary tracheostomy. Continuous mechanical ventilation. Percutaneous gastrostomy. Reoperation for carotid endarterectomy.
Although the complaint alleged that defendants' negligence caused decedent's death, plaintiff offered no proofs about the date or circumstances of her death. In his brief on this appeal, he advises that she died on September 25, 1999.
N.J.S.A. 2A:53A-29 provides that the failure to file an affidavit of merit "shall be deemed a failure to state a cause of action." N.J.S.A. 2A:53A-29. In Hubbard v. Reed, 168 N.J. 387, 774 A.2d 495 (2001), the Supreme Court held that no affidavit of merit was required in a case in which a jury could use "common knowledge" to decide whether the defendant was negligent. Id. at 395-96, 774 A.2d 495. The Court reasoned that the affidavit mandate was adopted to insure that a plaintiff would be able to produce expert testimony that the defendant breached a duty of care before compelling the doctor to defend. Id. at 394-95, 774 A.2d 495. But when the duty of care is obvious to a layperson, there is no need for expert testimony and hence no need for an affidavit of merit. Id. at 394-95, 774 A.2d 495.
In Hubbard the alleged malpractice was a dentist's pulling the wrong tooth. The Court observed that "[i]t has long been settled that pulling the wrong tooth is negligent as a matter of common knowledge." *1141 Id. at 396, 774 A.2d 495. Thus, because the plaintiffs would not have to present expert evidence at trial to establish the defendant's negligence, the Court held that plaintiffs "are not required to obtain an expert's affidavit prior to trial to demonstrate that their claim has threshold merit." Id. at 396-97, 774 A.2d 495.
Writing for the Court, the Chief Justice cautioned, however, that the common-knowledge exception should be narrowly construed "to avoid non-compliance with the statute":
Indeed, the wise course of action in all malpractice cases would be for plaintiffs to provide affidavits even when they do not intend to rely on expert testimony at trial. In most such cases, expert testimony will be required to establish both a standard of care and breach of that standard by the defendant, and a plaintiff who fails to present testimony could be subject to involuntary dismissal pursuant to Rule 4:37-2(b).
[Id. at 397, 774 A.2d 495.]
Accord, Palanque v. Lambert-Woolley, 168 N.J. 398, 407, 774 A.2d 501 (2001), in which no affidavit of merit was required because of the admitted "mistaken reading of [a] laboratory report."
The UMDNJ defendants' motion for summary judgment was granted on May 25, 2001. On June 21, 2001, the Court decided Hubbard and Palanque. Dr. Weinberg's motion was granted on June 22, 2001. Thereafter, plaintiff moved for reconsideration, arguing that no affidavit was required under the common-knowledge exception as well as the theory of res ipsa loquitur. The motion judge denied the application, stating:
As I said, I've indicated the hemotomin [sic] complexities involved and its development is not a subject of a lay jury's [sic] common knowledge. It's evidenced that the explanation of the cause or the development of the hemotomin [sic] is not a suitable matter for a layman to opine from without the guidance of expert testimony. And it was not within the common knowledge of a jury as plaintiff asserts. The facts of this case are different from a simple mistake of pulling the wrong teeth and the mistake of misreading the results of a pregnancy test.
The issue in this case had to deal with the cause and the complexities involved in the operative procedures performed on the plaintiff. However, the plaintiff can isolate the alleged medical neg negligence of the defendants herein.
It is obvious that an expert is necessary to discuss the causes and the complexities involved in the plaintiff's medical case. A medical malpractice complaint of plaintiff alleges that the defendant's [sic] herein were negligent in applying the medical knowledge in the operative procedure which has nothing to do with common knowledge.
This case is clearly distinguishable from the HUBBARD and PALANQUE... cases where the negligent acts were a simple misreading of the test results and an extraction of the wrong tooth. Both of those events clearly fall within the jury's common knowledge and outside the need for expert testimony. [Some phonetic spelling corrected.]
We agree and affirm the judgment substantially for the reasons stated by Judge Douglas T. Hague in his oral opinion of August 3, 2001, as supplemented herein. Expert testimony was needed to show defendant-doctors breached a duty of care and proximate cause.
Plaintiff also argues that no affidavit of merit is required in a case like this in which negligence may be presumed under the doctrine of res ipsa loquitur. He reasons *1142 that a hospital's discharge of a patient who is bleeding bespeaks negligence, that some one or more of the defendants must be responsible for the consequences, and that no expert testimony would be required to prove a breach of a standard of care because the burden would be upon defendants to show lack of culpability. However, in Hubbard, the Court also said:
Because we hold today that a plaintiff in a common knowledge case is not required to file an affidavit of merit, we find it unnecessary to resolve whether a separate exception exists in respect of the res ipsa loquitur doctrine. We note, however, that in a res ipsa loquitur action, the jury is allowed to infer a defendant's negligence " `where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect.'" Buckelew v. Grossbard, 87 N.J. 512, 525, 435 A.2d 1150 (1981) (quoting Bornstein v. Metropolitan Bottling Co., 26 N.J. 263, 269, 139 A.2d 404 (1958)). It may be necessary for a plaintiff in such actions to present "expert testimony to the effect that the medical community recognizes that an event does not ordinarily occur in the absence of negligence," id. at 527, 435 A.2d 1150,, in order to meet the first prong of the res ipsa loquitur test. An affidavit of merit would be required in those cases.
[Hubbard, supra, 168 N.J. at 391 n. 1, 774 A.2d 495.]
Given this recent statement of the Court, albeit by dictum in a footnote, we are satisfied that an affidavit of merit is required in a res ipsa case, unless the "common knowledge" doctrine is also applicable. Cf. Estate of Sinclair v. Roth, 356 N.J.Super. 4, 15 n. 3, 811 A.2d 460 (App.Div.2002) (duty of an intermediate appellate court of "ensuring fidelity to existing law").
Finally, plaintiff maintains that no affidavit of merit is required in a case asserting intentional torts, and he further claims that his pleadings below raised genuine issues of material fact as to several "intentional torts such as outrage, fraud, deceit [and] misrepresentation."[1] However, as Justice Zazzali has recently stated for the Court:
[W]hen presented with a tort or contract claim asserted against a professional specified in the statute, rather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession.
[Couri v. Gardner, 173 N.J. 328, 340, 801 A.2d 1134 (2002).]
Similarly, the label of the type of tort should not control. If "proof of a deviation from the professional standard of care for [the] specific profession ... is required, an affidavit of merit shall be mandatory for that claim, unless either the statutory, N.J.S.A. 2A:53A-28, or common knowledge exceptions apply." Id. at 341, 801 A.2d 1134. As no exception is applicable *1143 in this case, which essentially deals with a claimed deviation in the standard of care, an affidavit of merit was required.
The judgment is affirmed.
NOTES
[1] Plaintiff includes "lack of informed consent" in the list, although we have held an affidavit of merit is required as a prerequisite to an action on that theory. See Darwin v. Gooberman, 339 N.J.Super. 467, 480-81, 772 A.2d 399 (App.Div.), certif. denied, 169 N.J. 609, 782 A.2d 426 (2001), abrogated in part by Couri v. Gardner, 173 N.J. 328, 801 A.2d 1134 (2002). See also Howard v. University of Medicine & Dentistry, 172 N.J. 537, 800 A.2d 73 (2002), misrepresentation may give rise to lack of informed consent.