**Debra BRYAN, Plaintiff,**

v.

**Amira SHAH, M.D., and/or Prison Health Services, Inc. and/or John Doe, M.D., 1–5, and/or Steinenger Behavioral Care Services, and/or John Doe Physicians # 1–5, and/or Richard Roe 1–5, Defendants.**

**Civil Action No. 04–0629(JEI).**

United States District Court, D. New Jersey.

Jan. 10, 2005.

Sufrin Zucker, by Saul J. Steinberg, Esq., Camden, NJ, for Plaintiff.

White and Williams, by Kevin W. Lynch, Esq., Liberty View, Cherry Hill, NJ, for Defendants.

## OPINION

IRENAS, Senior District Judge.

Currently before this Court is Plaintiff's Motion for Reargument of the Court's Order dated October 12,[1] 2004.[2] For the

---

1. The Order and Opinion at issue were issued on October 12, 2004, but were not entered until October 13, 2004.

2. This Court had previously advised counsel that it would treat Plaintiff's motion as a motion for leave to amend the complaint. However, upon closer examination, we have determined that Plaintiff appropriately labeled her motion as a motion for reargument.

While there is no federal rule expressly on point, the Local Rules allow a party to seek an alteration or amendment of an order in a motion for reargument, or reconsideration. L. Civ. R. 7.1(g); *see also United States v. Compaction Systems Corp.*, 88 F.Supp.2d 339, 345 (D.N.J.1999).

We note Defendants' objections to this Court allowing the issue of the common

reasons set forth below, the Court will grant Plaintiff's motion, vacate the Order of October 12, 2004, and deny Defendants' motion to dismiss Plaintiff's state law claims.

## I.

Plaintiff Debra Bryan ("Plaintiff" or "Bryan") filed a complaint (the "Complaint") against Prison Health Services ("PHS")[3] and Dr. Amira Shah ("Shah"),[4] in state court on December 18, 2003. The case was removed to federal court on February 13, 2004. Plaintiff amended her complaint (the "Amended Complaint") on September 28, 2004, to include Steinenger Behavioral Care Services ("SBCS") as an additional defendant.[5]

The Complaint alleges violations of both state and federal law.[6] On October 12, 2004, this Court issued an Opinion and Order in which we dismissed, with prejudice, Plaintiff's state law claims against Defendants Shah and PHS[7] for failure to provide an Affidavit of Merit in conformity with N.J.S.A. 2A:53A-27 (the "Statute"). *Bryan v. Shah*, No. 04–0629, 2004 WL 2326383 (D.N.J. Oct.12, 2004).

## II.

The Statute mandates that a plaintiff serve an Affidavit of Merit ("Affidavit") on the defendant(s) in all cases alleging medical malpractice under state law. Service must be made within a period of at most 120 days after the filing of the Answer. N.J.S.A. 2A:53A–27; *see also Burns v. Belafsky*, 166 N.J. 466, 473–77, 766 A.2d 1095,

knowledge exception to be heard on reargument. (D. Opp. To P.'s Mot. for Rearg., at pp. 4–12.) Reargument or reconsideration should be granted only in the limited circumstances where the court "overlooked" dispositive facts or controlling decisions of law. *See* L. Civ. R. 7.1(g); *Bowers v. Nat'l Collegiate Athletic Assoc.*, 130 F.Supp.2d 610, 612 (D.N.J.2001). Neither party briefed the common knowledge exception, which we called to the parties' attention in footnote 11 of the October 12, 2004 Opinion. Thus, the Court did "overlook" the application of the common knowledge exception in the sense that it played no role in the Court's decision. As demonstrated in this Opinion, consideration of the common knowledge exception "might reasonably have resulted in a different conclusion." *See id.* at 613. Accordingly, we find that, procedurally, Plaintiff's motion for reargument is appropriate and has merit. For the reasons set forth in this Opinion, we will also vacate the October 13, 2004 Order.

3. PHS is contracted by Camden County to provide health related services at the Camden County Correctional Facility.

4. Dr. Shah is believed by Plaintiff to be the person in charge of her medical care while she was at the Camden County Correctional Facility. (P. Cmpl.) He is an employee of PHS.

5. Plaintiff alleges that SBCS is responsible for the diagnosis, treatment and medical management for inmates at the Camden County Correctional Facility with mental health and mental medical issues. (P. Am.Cmpl.)

6. In the Complaint, Bryan alleged that Defendants committed medical malpractice under New Jersey law when Defendants failed in assessing her condition, monitoring her condition, administering medication, providing care and monitoring her blood levels while she was incarcerated at the Camden County Correctional Facility. (P. Cmpl.) In addition, Bryan alleged that Defendants' conduct violated 42 U.S.C. § 1983 and the Eighth and/or the Fourteenth Amendment, because they demonstrated a willful or deliberate indifference to Bryan's serious medical needs. (P. Cmpl.) At issue in the present motion are Plaintiff's state law claims.

7. Since the October 12, 2004 Opinion and Order, at issue in the instant motion, related only to the dismissal of state law claims against Defendants PHS and Shah, for the purposes of this Opinion, the term "Defendants" will refer only to PHS and Shah, and not to SBCS, unless otherwise indicated.

1099–1101 (2001) (holding that while the Statute provides an initial 60 day window, one 60 day extension may be granted by a court for good cause shown and the plaintiff may apply for the extension even after the initial 60 days have run, but before the full 120 days has expired).

If a plaintiff fails to file the Affidavit in the appropriate manner, the defendant may move to dismiss the cause of action. If the motion is granted, the state claims should be dismissed with prejudice. *Tischler v. Watts*, 177 N.J. 243, 246, 827 A.2d 1036, 1038 (2003) (reaffirming that non-compliance with the Statute shall result in a dismissal with prejudice); *see also* N.J.S.A. 2A:53A–29 (failure to comply with the Statute is deemed a failure to state a cause of action).

### III.

Defendants PHS and Shah filed their Answer to the Complaint on February 26, 2004. Defendants PHS and Shah moved to dismiss the state law claims after the 120 days had run. In her Response, Plaintiff conceded that the Affidavit was filed late, but argued that her cause of action should not be dismissed with prejudice because (1) she had substantially complied with the Statute; and/or (2) some other equitable doctrine applied. This Court found that Plaintiff did not substantially comply with the Statute. Furthermore, this Court held that the doctrines of estoppel, laches and waiver did not apply. Accordingly, we dismissed the state law claims against PHS and Shah with prejudice.

In reaching that decision, we did not consider the common knowledge exception, as it was not raised in the parties' papers. After receiving Plaintiff's Notice of Motion for Reargument and Defendants' Opposition, this Court, by letter dated November 4, 2004, requested full briefing on the applicability of the common knowledge exception. At this time, Plaintiff requests that this Court withdraw its dismissal of her state claims, because, she contends, her case falls under the common knowledge exception.

### IV.

Under the common knowledge exception, if the professional negligence would be obvious to a layperson, the Statute does not require an Affidavit. *Risko v. Ciocca*, 356 N.J.Super. 406, 409, 812 A.2d 1138, 1140 (App.Div.2003). The New Jersey courts have concluded that the Legislature did not intend for the Statute to apply in cases where "jurors, using ordinary understanding and experience and without the assistance of an expert, can determine whether a defendant has been negligent." *Hubbard v. Reed*, 168 N.J. 387, 395, 774 A.2d 495, 500 (2001) (case in which the defendant dentist allegedly pulled the wrong tooth).

While such an exception is viable, its application is limited as the negligence must be so apparent that "an expert will not be called to testify as to the standard of care." *Id.* at 390, 774 A.2d at 497. The New Jersey Supreme Court has held that "the threshold of merit should be readily apparent from a reading of the plaintiff's complaint." *Id.* at 395, 774 A.2d at 500.

In *Palanque v. Lambert–Woolley*, 168 N.J. 398, 400, 774 A.2d 501 (2001), decided the same day as *Hubbard*, the New Jersey Supreme Court reversed the lower courts' dismissal of the plaintiff's claim pursuant to the Statute, because it found that her claim fell within the common knowledge exception. In *Palanque*, the plaintiff claimed that the defendant-doctor failed to act with reasonable care when she misread the specimen identification numbers as plaintiff's test result numbers and mistakenly determined that plaintiff had an ec-

topic pregnancy. *Id.* at 407, 774 A.2d at 507. The plaintiff contended that "both the deviation [from generally accepted medical standards] and causation are inferrable by a jury without expert testimony." *Id.* The court did not require the plaintiff to show "how she would actually present admissible evidence of malpractice or professional negligence·.... [or] how she would survive a motion at the end of her case in the absence of such testimony." *Id.* It "decline[d] to anticipate" whether plaintiff could survive any dispositive motions following the presentation of her case. *Id.*

Consistent with *Hubbard* and *Palanque,* the Third Circuit found that an Affidavit was not required under the common knowledge exception in *Natale v. Camden County Correctional Facility,* 318 F.3d 575 (3d Cir.2003). *Natale* overturned the District Court's finding that " '[t]he acceptable professional standard for treating an insulin-dependent diabetic is not within a lay person's common knowledge such that PHS's negligence can be determined without the benefit of the specialized knowledge of experts." *Id.* at 580. Specifically, the Third Circuit found that a reasonable jury could determine without assistance of expert testimony whether the defendants acted negligently when "PHS personnel failed to call [plaintiff's] treating physician to determine how often he needed insulin to be administered" and when PHS personnel failed to even ask the plaintiff how often he needed his insulin. *Id.* The Third Circuit concluded that "[w]hile laypersons are unlikely to know how often insulin-dependent diabetics need insulin, common sense—the judgment imparted by human experience—would tell a layperson that medical personnel charged with caring for

an insulin-dependent diabetic should determine how often the diabetic needs insulin." *Id.*

The common knowledge exception was addressed recently in federal court in *Jackson v. Fauver,* 334 F.Supp.2d 697 (D.N.J.2004). The plaintiffs, fifteen former and current inmates in a New Jersey state prison, filed suit alleging medical malpractice under state law and violation of their Eighth Amendment rights. *Id.* at 703. Defendants moved for summary judgement on a variety of grounds, including failure to provide an Affidavit within the statutory time period.[8] *Id.* at 743. The court summarized the plaintiffs' surviving claims as follows: "CMS's alleged failure to provide his radiologist oncologist in a timely manner with critical test results that his specialist specifically requested .... failure by CMS personnel to timely provide him with diabetes medication and control his blood-sugar levels.... CMS's continuous failure to provide him prescribed HIV/AIDS medication.... CMS's failure to provide him prescribed blood pressure medication.... CMS's failure to provide him with support stockings prescribed for him, and about the length of time that it took CMS to approve the hernia surgery that his physician requested .... an allegedly inexcusable and excessive delay in providing him with a knee brace that was prescribed for him." *Id.* at 743. In each instance, the plaintiffs claimed that medical-related services or products, which had previously been prescribed or ordered, were not provided. The court concluded that "[a] reasonable jury would not need the assistance of an expert to conclude that CMS per-

---

8. It was undisputed that the plaintiffs did not serve the defendants with an Affidavit. *Id.* at 743. In the instant case, Plaintiff also does not dispute that she did not serve an Affidavit within the requisite time period.

sonnel were negligent when they allegedly failed both to provide these plaintiffs with medical care prescribed for them by their treating specialists and to follow the medical instructions of these specialists." *Id.*

In contrast, the common knowledge exception was found not to apply in *Risko*, 356 N.J.Super. at 407–08, 812 A.2d at 1139. The plaintiff's wife in *Risko* underwent a specialized surgery, a right carotid endarterectomy. Within hours of being discharged from the hospital, she called for an ambulance and subsequently went into cardiac arrest. *Id.* at 408, 812 A.2d at 1140. She underwent another procedure upon return to the hospital—the doctor "reopened the site of the endarterectomy and evacuated an 'expanding hematoma,' which, according to the operative report, was not present at the time of her discharge." She was sent to the surgical intensive care unit, where at some point she suffered a "right hemispheric stroke." *Id.* at 409, 812 A.2d at 1140. She was discharged to rehab after a month and a half. She died a year later. *Id.* The court, relying on the lower court's opinion, found that a layperson could not obtain a solid grasp of the cause and development of hematoma without the assistance of an expert. *Id.* at 410, 812 A.2d at 1141. The appellate court agreed with the lower court that this case dealt with complexities associated with this type of surgery, and not simple mistakes, such as pulling the wrong tooth or misreading a number. *Id.* at 1141, 812 A.2d at 410–11.

### V.

On August 13, 2002, Bryan was lodged in the Camden County Correctional Facility. She advised the intake personnel during her admission of her medical condition and needs. (P. Cmpl., at p. 1; "Admission Data" and "Medical History and Physical Assessment," bates numbers 0000001–2.) Bryan was diagnosed at age 16 with bipolar disorder and was taking lithium[9] as part of her treatment regime. (D. Mot. For Summ. J.) While at the Camden County Correctional Facility, Bryan complained of various symptoms, including but not limited to nausea, vomiting, swollen ankles, aches and pains, confusion, pressure behind her eyes and ears, rapid and unexplained weight gain, and acute abdominal pain. Bryan was transferred by PHS to Our Lady of Lourdes Medical Center on September 28, 2002, where blood and laboratory tests determined that her lithium level was three times the accepted maximum safe level and that she was suffering from lithium toxicity. (P. Letter Brief, at p. 10.) Bryan also suffered heart failure, renal compromise and mental anguish. (P. Cmpl.) Bryan was released from the hospital before Christmas, 2002. (D. Mot. for Summ. J.)

Plaintiff alleges that Defendant PHS was negligent when, through its employees, it "twice failed to obtain blood tests to monitor Lithium levels, which tests were twice ordered by the physician." (P. Letter Br., at p. 10.) Plaintiff provides exhibits showing that Lithium lab studies were ordered on August 16, 2002, and September 10, 2002, but were never conducted.

### VI.

Defendants oppose Plaintiff's instant motion, contending that the common

9. "Lithium is an element of the periodic table that readily forms salts." Carol Turkington & Elliot Kaplan, *Lithium*, at http://my.webmd.com/content/article/4/1680–50556.htm?last selectedguid={5FE84E90–BC77–4056–A91C– 9531713CA348} (last visited September 13, 2004). Lithium carbonate has been found to be one of the most effective treatments for manic depression and other types of depression. *Id.* It, however, "has a narrow range between toxic and therapeutic doses." *Id.*

knowledge exception does not apply.[10]

■ Defendants argue that Plaintiff "knew" that this case was not one that would fall within the narrow exception of common knowledge, because she "had advised both defendants and the Court that she intended to rely upon the testimony of as-yet unnamed liability experts at trial to support her claims." (D. Supp. Mem. of Law, at 7.) Defendants place weight on the fact that Plaintiff did not raise the issue of the common knowledge exception until after her state law claims were dismissed for failure to comply with the Statute and claim that raising the exception at this point "is grossly out of time." (*Id.* at 7–8.)

While it is true that the New Jersey courts have explicitly advised plaintiffs to obtain an Affidavit as early in the litigation as possible, even in cases where the plaintiffs do not intend to rely on an expert, *see, e.g., Hubbard v. Reed,* 168 N.J. at 397, 774 A.2d at 501, this Court is not aware of any case, nor have Defendants cited any case,

that has found that once a Plaintiff states she intends to provide an Affidavit she forecloses any potential for later requesting that the common knowledge exception apply. The common knowledge exception may be invoked not only after the 120 day window has run, but even when the plaintiff first indicates a desire to rely on expert testimony.

■ Defendants argue that the instant case does not fall within the narrow boundaries of the common knowledge exception. We find, however, that it is well within the purview of the ordinary juror whether or not Defendants' failure to follow or complete the order for lab tests constituted negligence. We do not suggest that the average juror would know that an individual taking lithium needs such tests; we do find, however, that an average juror would know, as demonstrated in *Jackson,* whether or not an alleged failure to fulfill or complete prescriptions, orders and the like

---

**10.** Defendants further argue that the standard for granting a motion to amend cannot be met because Plaintiff cannot provide "substantial and convincing evidence." Defendants claim that Plaintiff has not and cannot provide the Court with any "factual basis" upon which to rest her claim that the common knowledge exception applies. Defendants' dispositive motion was filed prior to Plaintiff's motion for reargument, which we initially interpreted as a motion to amend. Defendants contend that Plaintiff's burden is to show that her amendment has "substantial merit," *and* to provide "substantial and convincing evidence" in support of her claim. (D. Supp. Mem. of Law., at p. 9) (citing *Verhein v. South Bend Lathe, Inc.,* 598 F.2d 1061, 1063 (7th Cir.1979); *Carey v. Beans,* 500 F.Supp. 580, 582 (E.D.Pa.1980)).

Plaintiff's labeling of her motion as a motion for reargument was in fact appropriate. Even assuming *arguendo* that Plaintiff's motion should be treated as an application for leave to amend, Plaintiff's argument that her claims fall within the common knowledge exception has merit and thus, an amendment

would not be futile. Plaintiff has sufficiently supported her claim with evidence of the medical orders for tests/lab work. Furthermore, allowing Plaintiff to proceed with her state law claims under the common knowledge exception would not cause undue prejudice or undue delay. *See Bailey v. United Airlines,* 279 F.3d 194 (3d Cir.2002).

Defendants allege that Plaintiff has not complied with discovery requests, and relate Plaintiff's alleged non-compliance to her inability to meet the burden for a motion to amend. (D. Supp. Mem. of Law., at p. 8–9.) Defendants further argue that Plaintiff's motion is out of time. We do not find Defendants' argument persuasive. We would not deny a motion to amend for the sole purpose of imposing a sanction for alleged discovery violations. Furthermore, the Third Circuit has held that the passage of time alone in filing a motion to amend is not a sufficient ground to deny the motion. *See Cureton v. Nat'l Collegiate Athletic Assoc.,* 252 F.3d 267, 273 (3d Cir.2001). Accordingly, we would find that Plaintiff has met her burden under the standard for seeking leave to amend.

of the treating doctor deviates from the standard of care.[11]

We do not find it relevant that the individual ordering the tests was possibly a mental health specialist or psychiatrist, employed by Steinenger Center. (D. Supp. Mem. of Law., at p. 9–11.) As in *Jackson,* the key is that medical care was ordered or prescribed by "treating specialists" and then, due to alleged negligence, that care was not rendered or completed in a timely manner.[12]

▮ Defendants further note that on November 19, 2002, over a month and a half after Plaintiff had been admitted to the hospital and had been diagnosed with lithium toxicity, Dr. Edward Hume noted that it was "[n]ot clear if Lithium toxicity was a cause if [sic] inmate's (IM's) problems or a result." (*Id.*)

Defendants argue that "if Dr. Hume was unable to discern if Bryan's reaction to Lithium was either the cause or the result of her medical problems, it is unreasonable to expect a lay jury to supply the standard of care in this instance from its own experiences and determine the liability of the licensed individuals involved." (D. Supp. Mem. of Law., at p. 12.)

Defendants' argument fails to distinguish between whether (i) a healthcare professional deviated from the generally accepted standard of care, and (ii) the harm alleged was caused by such deviation. As discussed above, we find that Bryan could show that there was a deviation from the standard of care without the assistance of expert testimony, because it is well within a layperson's knowledge whether following or disregarding a medical order amounts to a deviation.

Defendants' argument regarding Plaintiff's ability to prove causation or damages is premature.[13] While the invocation of the common knowledge exception may preclude a plaintiff from offering expert testimony as to the standard of care,[14] it does

11. We stress that this case does not appear to turn on whether Defendants knew that a patient taking lithium is at risk of suffering from lithium toxicity if regular lab tests are not performed; this case does appear to revolve around whether medical orders were adhered to and whether Defendants followed up with the Plaintiff after the orders were given.

In *Natale,* the court did not suggest that a layperson would know how often an insulin-dependant diabetic needed insulin. 318 F.3d at 580. Similarly, we do not suggest that a layperson would know how often blood work is required when a patient is taking Lithium. We do, however, find that a layperson, once told that lab tests were needed and ordered, could determine if Defendants were negligent in not obtaining those tests and following up with Plaintiff's treatment in a timely manner.

12. In their opposition, Defendants suggest that it is not the case that the staff of PHS "ignored" orders for blood tests. (D. Supp. Mem. of Law., at p. 9.) At this stage of the litigation it is too early to decide factual disputes.

13. In *Palanque,* when deciding that the common knowledge exception applied to the plaintiff's case, the court "decline[d] to anticipate" whether or not the plaintiff would put on a sufficient presentation of her case later in the litigation. 168 N.J. at 407, 774 A.2d at 507. We too will not guess at this juncture how Plaintiff could show, and to what certainty, causation.

14. In *Hubbard,* the New Jersey Supreme Court held that in those cases applying the common knowledge exception, the negligence must be so apparent that "an expert will not be called to testify as to the standard of care." 168 N.J. at 390, 774 A.2d at 497. Plaintiffs who utilize the common knowledge exception cannot later in the litigation call an expert to testify as to the standard of care. If a plaintiff could invoke the common knowledge exception to avoid obtaining and serving an Affidavit, and then use an expert to testify at trial as to the standard of care, there would be potential for frustrating the intent of the Statute. The Federal Rules of Evidence allow expert testimony only where the expert will be helpful to or will aid the trier of fact. Fed.R.Evid.

not preclude *all* expert testimony.[15]

Indeed, the Statute is silent as to the use and admissibility of expert testimony at trial.[16] The Statute creates a minimum bar for pursuing a claim of professional malpractice. It sets the threshold for whether or not a case can go forward. *See Hubbard*, 168 N.J. at 394, 774 A.2d at 499. A plaintiff must demonstrate through an Affidavit of Merit that "a reasonable probability exists that the care, skill or knowledge [of the defendant] fell outside acceptable professional or occupation standards." N.J.S.A. 2A:53A–27. The Affidavit need not deal with damages or causation.

Defendants also argue that Bryan's refusal of treatment and non-compliance with PHS staff somehow preclude a finding of medical negligence. Defendants find it "significant[ ]" that Plaintiff refused blood work on September 5, 2002. (D. Supp. Mem. of Law., at p. 11.) At most, the September 5, 2002 refusal related to one of the two orders (i.e. the order dated August 16, 2002); it could not explain, however, why the September 10, 2002, order was not performed. Moreover, it is not for the Court at this early stage in the litigation to decide whether or why Plaintiff refused to allow the blood work.

Defendants also point out that Plaintiff refused treatment: (1) in August, 2002, with regards to her diabetes, by not following a 2000 calorie diet and by refusing the administration of Glucophage (to control her glucose levels);[17] (2) on September 26, 2002, with regards to treatment for constipation; and (3) on November 19, 2002, by stopping her anti-psychotic medication Haldol. (D. Supp. Mem. of Law., at p. 11–12.)

This Court does not see how the above refusals are related to the medical orders to perform lab work on August 16, 2002, and September 10, 2002. These alleged refusals relate to other medical conditions, and the November 19, 2002, notation was made well after Plaintiff was treated at the hospital for lithium toxicity.

## VII.

For the reasons set forth above, the Court will grant Plaintiff's motion for rear-

---

702; *see also U.S. v. Syme*, 276 F.3d 131, 140 n. 1 (3d Cir.2002) (finding the expert testimony was admissible because "the average juror could benefit from a physician's expert testimony" on that particular point); *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1139 (3d Cir.1983) (noting that "[h]elpfulness is the touchstone of Rule 702"). Expert testimony covering an area known and within the comprehension of the layperson is generally not helpful to the trier of fact and thus inadmissible. *See, e.g., U.S. v. Torres–Galindo*, 206 F.3d 136, 141 (1st Cir.2000) (finding that expert testimony was improperly admitted because it was likely not helpful, as it covered an area with which the jury, "out of its own experience," was familiar); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992) (finding that the expert's opinion was not helpful and thus inadmissible, because the expert was "not in a better position than a juror").

**15.** *Hubbard* only addressed the standard of care and not causation. 168 N.J. at 394, 774

A.2d at 499 ("a plaintiff in a common knowledge malpractice case will not need expert testimony at trial to establish the standard of care or a deviation therefrom"). In *Natale*, the Third Circuit found that the plaintiff's case could go forward because a layperson could determine whether the defendants' actions constituted a deviation from the generally accepted standard of care. 318 F.3d at 580. The court did not comment, however, as to whether the plaintiff would be allowed to offer expert testimony showing plaintiff's subsequent death was caused by defendants' alleged deviation.

**16.** The Court also notes that the Statute does not require that the affiant be the plaintiff's expert at trial. Indeed, the Statute is silent as to trial testimony.

**17.** Plaintiff has Type II diabetes. ("Medical History and Physical Assessment Sheet, bates no. 0000002.")

gument, vacate the Order of October 12, 2004, and deny Defendants' motion to dismiss Plaintiff's state law claims. The Court will issue an appropriate Order.

## ORDER GRANTING PLAINTIFF'S MOTION FOR REARGUMENT

This matter having appeared before the Court upon Plaintiff's motion for reargument, the Court having considered the submissions of parties, for the reasons set forth in an Opinion issued by this Court, which findings of fact and conclusions of law are incorporated herein by reference, and for good cause appearing,

**IT IS** on this *10TH* day of **January, 2005,**

**ORDERED THAT:**

Plaintiff's motion for reargument is hereby **GRANTED** and this Court hereby **VACATES** its October 12, 2004 Order and **DENIES** Defendant PHS's and Defendant Shah's motion to dismiss Plaintiff's state law claims with prejudice.