

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2005

# Sylvester v. Newark

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4872

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Sylvester v. Newark" (2005). *2005 Decisions.* Paper 1565.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1565

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4872

LOURDES SYLVESTER, Administratrix Ad Prosequendum for the
Estate of David Vargas; LOURDES SYLVESTER, Individually;
WILFREDO VARGAS, JUANA VARGAS, Individually*,
Appellants

v.

CITY OF NEWARK; THOMAS C. O'REILLY, Newark Chief of Police;
JOSEPH J. SANTIAGO, Newark Director of Police; JOANNE Y.
WATSON, Newark Business Administrator; SHARPE JAMES, Mayor
of Newark; COUNTY OF ESSEX; JAMES W. TREFFINGER, County
Executive; MARTIN R. HELLWIG, Warden of Essex County Jail;
MARK ESSEX COUNTY JAIL WARDEN, CAPTAIN, INTERNAL AFFAIRS
UNIT; ESSEX COUNTY JAIL; CORRECTIONAL HEALTH SERVICES, INC.

(*Amended per Clerk's Order dated 2/4/04)

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 00-cv-02693
District Judge:  The Honorable Dennis M. Cavanaugh

Submitted Under Third Circuit LAR 34.1(a)
November 2, 2004

Before: ALITO, BARRY, and FUENTES, <u>Circuit Judges</u>

(Opinion Filed:    January 14, 2005    )

BARRY, <u>Circuit Judge</u>

After the death of an inmate in a New Jersey prison, his family sued those responsible for his detention and care. The District Court granted summary judgment on all counts in favor of defendants. Summary judgment is, of course, proper when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We have jurisdiction under 28 U.S.C. § 1291, and exercise plenary review of the District Court's order. <u>See</u> <u>Sempier v. Johnson & Higgins</u>, 45 F.3d 724, 727 (3d Cir. 1995). Based on that review, we will affirm.

## I.

On the night of October 2, 1999, Newark police arrested the decedent, David Vargas ("Vargas"). He was taken to the Newark City Jail where a medical intake sheet was filled out; Vargas did not indicate that he had any medical problems or drug dependencies. After his arraignment two days later on a charge of cocaine possession, Vargas was transferred to the Essex County Jail, also in Newark.

At 5:15 p.m. on October 5th, Corrections Officer ("C/O") Littorio submitted an "Urgent/Emergent Medical Contact Log Sheet" to advise the medical department that

Vargas was complaining of "withdrawal." A-CHS25.[1] Vargas, who was vomiting, was seen almost immediately by Nurse Elgindy, a nurse employed by Correctional Health Services ("CHS"), one of the appellees in this case. He told her that he had used seven bags of heroin and two bottles of cocaine two days prior to his arrest and had not eaten for four days. He was, she believed, in acute drug withdrawal.

Nurse Elgindy contacted the on-call doctor, one Dr. Anicette, for instructions regarding the proper course of treatment. Dr. Anicette prescribed Pepto Bismol, Clonidine, Benadryl, and Tigan, an antinausea medication, which was to be administered by injection in doses of 200 milligrams every six hours. At 5:30 p.m., Nurse Elgindy gave Vargas the initial dose, and told him that if his vomiting did not stop, he could request follow-up injections of Tigan. Vargas was returned to his cell shortly thereafter. Later that day, Vargas was visited by his sister, appellant Sylvester. During their visit, Vargas did not complain about his health; indeed, he told Sylvester that he was doing fine without methadone because the medical staff had given him other medication to treat his withdrawal.

On October 7, Vargas was transferred to a facility in Caldwell, New Jersey, known as the Jail Annex, after another CHS nurse, Nurse Boxer, reviewed his chart and cleared

---

[1]Each party submitted an appendix in this case. Those references denoted by "A-CHS" are from the appendix that Correctional Health Services provided; those denoting "SA" are from the appendix provided by the County of Essex; and those beginning with "A" are from the appendix provided by appellants.

3

him for the transfer. The following day, at 11:20 a.m., he was given a routine physical examination at the Jail Annex by Dr. Desembrana, a staff physician for CHS. Because Vargas's records from the Essex County Jail had not yet arrived, Dr. Desembrana took his medical history. Vargas denied any medical problems but admitted that he had used intravenous drugs for the past five years, and described stomach cramping consistent with withdrawal, for which he was given Maalox and Tagamet. There were no outward signs of distress and he was not vomiting.

Vargas was returned to his cell between noon and 1:00 p.m. An inmate in a nearby cell, Richard Bailey, noticed that Vargas looked sick and later told investigators that twice he heard a guard ask Vargas if he wanted to go back to the infirmary, and both times Vargas refused. Around 4:00 p.m., Nurse Francis, another nurse for CHS, arrived at the Jail Annex. Dr. Desembrana told her to be sure to medicate Vargas during her shift because he was going through withdrawal.

Also at 4:00 p.m., as C/O Tafuri began his shift, he was called out to by Hakim Coleman, Vargas's cell-mate, because Vargas had fallen and was vomiting. C/O Tafuri called for assistance, and C/O Brooks responded at 4:05 p.m. C/O Brooks immediately called for medical support, including EMT staff. At 4:10 p.m., Nurse Francis arrived at the cell and, within minutes, Vargas was being helped down the stairs to the infirmary, where Nurse Francis took his vital signs and treated the cheek wound he sustained in his fall. He was kept in the infirmary for observation.

4

Not long thereafter, another CHS staff member, Nurse Epie, was taking care of diabetic inmates in a room next to the infirmary when C/O Purdie called to her that Vargas did not appear to be breathing. Nurse Epie told Purdie to call 911 and administered oxygen to Vargas, but he did not respond. An EMT crew performed CPR; again, Vargas did not respond. Paramedics arrived at approximately 4:45 p.m. and pronounced Vargas dead at 5:25 p.m. According to the Medical Examiner's office, the cause of death was acute peritonitis, gastric perforation, and acute and chronic gastritis. Death was ruled to be "natural."

Dr. Ralph Woodward, the County's Medical Director, reviewed Vargas's records and stated during his deposition that the cause of the gastric perforation was "speculative" and could be due to a variety of factors, including prolonged vomiting or a genetic weakness. Dr. Shansky, the Medical Monitor in prior class-action litigation involving the Essex County jails, concluded that "it was not likely that [Vargas's stomach problem] could have been diagnosed early enough to save his life." A-CHS106.

On July 27, 2001, an amended complaint was filed, setting forth nine causes of action.[2] During argument on defendants' summary judgment motion, plaintiffs withdrew several of those claims, and the District Court subsequently granted summary judgment

---

[2]The causes of action were (1) a claim under 42 U.S.C. § 1983; (2) a claim under 42 U.S.C. § 1981; (3) a claim under the New Jersey Law Against Discrimination; (4) a claim under the New Jersey Constitution; (5) a claim of false imprisonment; (6) a claim of assault and battery; (7) a claim of intentional infliction of emotional distress; (8) a claim of wrongful death; (9) and a claim of loss of services and advice.

5

on the claims that remained.  This appeal followed.

## II.

We have set forth at some length the specifics of the medical care given Vargas because all but one-half page of appellants' fifty-three page opening brief complains of the care he received and bemoans the care he should have received.  According to them, that care was "inadequate" and "outside the bounds of sound professional judgment." Thus, appellees were "deliberately indifferent" and their conduct "shocked the conscience" and, failing that, appellees were negligent.  Given this, virtually the entirety of the argument before us is addressed to Count One of the Amended Complaint, i.e. a claim under 42 U.S.C. § 1983.[3]

But the facts we have set forth and the other facts of record, even when viewed in the light most favorable to appellants and stripped of the rhetoric and exaggeration with which appellants have clothed them (Vargas was not, for example, left to "vomit for days," App. Br. at 18), underscore the conclusion of the District Court, and the conclusion we reach:  Vargas's medical care was not "inadequate" at all, much less did it constitute, as appellants contend, a violation of the Eighth Amendment.

To begin with, appellants' argument presumes the Eighth Amendment applies here, which it does not.  In this connection, Vargas was a pre-trial detainee to whom the

---

[3]No common law negligence claim was pled, and appellants cannot raise a claim of negligence now.  See Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994).

6

Due Process Clause of the Fourteenth Amendment afforded protection. Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977); see also Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). The Eighth Amendment applies only after the state "has secured a formal adjudication of guilt" because prior to that time it has not acquired "the power to punish with which the Eighth Amendment is concerned." Ingraham, 430 U.S. at 671-72 n.40. None of the parties has made this distinction and the District Court did not do so.

As we indicated in a recent case in which the same error was made, although the section 1983 claim should have been pleaded as one based on the Due Process Clause of the Fourteenth Amendment, this failure

> does no lasting damage, however, as the Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protection available to a convicted prisoner,' without deciding whether the Fourteenth Amendment provides greater protections. In previous cases, we have found no reason to apply a different standard than that set forth in Estelle [v. Gamble, 429 U.S. 97 (1976)] (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment.

Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 (3d Cir. 2003) (citation omitted). We, therefore, went on in Natale to evaluate the Fourteenth Amendment claim for inadequate medical care under the now-familiar Eighth Amendment standard, set forth in Estelle, used to evaluate similar claims, i.e. was there evidence of a serious medical need and acts or omissions by prison officials indicating deliberate indifference to those needs. Id. at 582.

7

There is no real dispute that Vargas was suffering from acute withdrawal with excessive vomiting, a serious medical need. The question becomes, then, whether appellees were deliberately indifferent to that need. The requisite deliberate indifference can be manifested in various ways, such as "know[ing] of and disregard[ing] an excessive risk to inmate health or safety," Farmer v. Brennan, 511 U.S. 825, 837 (1994); "necessary medical treatment [being] delayed for non-medical reasons," Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987); and erecting "arbitrary and burdensome procedures that 'result in interminable delays and outright denials of medical care to suffering inmates,'" id. (internal citations omitted).

The record is bereft of any evidence of deliberate indifference, however that standard is manifested. Vargas was immediately seen and treated when, at the Essex County Jail, he went into withdrawal and was vomiting, and when, after transfer to the Jail Annex, he described stomach problems consistent with withdrawal and later began to vomit in his cell. There is no evidence that at any time Vargas's condition or complaints were ignored, or that care for that condition and those complaints was at any time delayed for a non-medical reason or any other reason. And to the extent that appellants argue that the medical professionals should have done more, or done it differently, or done it better, that is not deliberate indifference. See, e.g., Inmates of Allegheny County Jail v. Pierce,

612 F.2d 754, 760 (3d Cir. 1979).[4]  Summary judgment was properly granted on Count One.

## III.

As mentioned at the outset, appellants' claim of inadequate medical care occupies all but a few lines of their opening brief on appeal.  Those remaining few lines simply conclude that the assault and battery claim must go to a jury, but do not cite any evidence to support that claim or even suggest who committed the assault and battery, or why or even when it was committed, <u>if</u> it was committed, which is anything but clear.  Because appellants were required to come forward with specific facts showing there was an issue for trial and did not do so, the District Court correctly granted summary judgment on Count Six of the Amended Complaint.

## IV.

The November 25, 2003 order of the District Court will be affirmed.

_____

[4]It is worthy of some note, first, that no individual medical professional was named as a defendant in the Amended Complaint and, second, that appellants concede there is no vicarious liability against appellee CHS vis-a-vis the section 1983 claim.  (A484).