PSM-207                                                              NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1463
_____

RUSSELL ALAN LATONA,
                                                        Appellant

v.

PRISON HEALTH SERVICES INC.; RENEE WNEK; SUSAN GEORGE; JOHN
DOE#1; JOHN DOE#2; JOHN DOE#3
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civil Action No. 07-cv-00001 )
District Judge:   Honorable Sean J. McLaughlin
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 8, 2010

Before:   FUENTES, GREENAWAY, JR. and VAN ANTWERPEN, Circuit Judges

(Opinion filed October 14, 2010)

_____

OPINION
_____

PER CURIAM

        Russell Latona, proceeding pro se, appeals an order of the United States District

Court for the Western District of Pennsylvania granting summary judgment in favor of

Renee Wnek, Susan George, and Prison Health Services, Inc. in his civil rights action.

Latona claims a violation of his Eighth Amendment rights based on a failure to provide

medication and medical treatment while he was incarcerated. For the reasons discussed

below, we will affirm the judgment of the District Court.[1]

The record reflects that Latona arrived at Erie County Prison on October 4, 2006.

At 1:00 a.m. on October 5, 2006, Nurse Renee Wnek did a physical assessment of Latona

and recorded his medical history. Wnek noted "GERD [gastroesophageal reflux

disease]," "back pain/knee pain," and "jaw/rib pain" on his form, recorded six medications

Latona was then taking for pain and psychiatric treatment, and noted a 2000 suicide

attempt and treatment for "bi polar." Ex. 4 at 000101-02.[2] Wnek also noted that

Latona's vital signs were normal, that he had fallen at work in August 2006, and that he

had brought copies of his medical records, which she would review in the morning.

Wnek completed a psychiatric referral form and recommended a bottom bunk due to

Latona's back injury and rib fractures. There is no evidence that Wnek had any further

---

[1]As fully described in the Magistrate Judge's report, this case has a lengthy procedural history and includes the filing of several amended complaints. Latona had also brought an Eighth Amendment excessive force claim, which was dismissed, and a First Amendment freedom of religion claim, which was withdrawn. Latona challenges only the grant of summary judgment on his medical claims as set forth in his Third Amended Complaint.

[2]Latona's medical records, Exhibit 4 to the defendants' motion for summary judgment, were filed under seal in District Court. For ease of reference, we will refer to Ex. 4 and the applicable bates-stamp number.

contact with Latona.

Susan George, a Mental Health Counselor, also met with Latona on October 5, 2006. George's notes reflect that Latona told her that he needed his medications and that she intended to follow-up with the treatment team. Latona was placed on regular watch status, confined in an observation cell, and observed every thirty minutes. Latona's housing plan document, which was signed by George, reflects that he would be placed "on regular watch until seen for medication stabilization by Dr. Kohn." Ex. 4 at 000131.

The following day, the Mental Health Treatment Team, which included George, rejected Latona's request for psychiatric services. The notice provided to Latona stated that there was "no reason for psychiatric intervention at this time because: we have not yet received medical records verifying your reported diagnosis and treatment history." Ex. 4 at 000151. In an affidavit submitted in support of her motion for summary judgment, George attested that the medical records Latona had brought with him were from December 2005 and did not reflect his current treatment. George also stated that it was PHS policy that records be retrieved directly from an inmate's provider.

Latona completed a medical request form on October 9, 2006, noting that he had been without his medications for six days. Latona further stated that the records that he brought with him to the prison did reflect his current medications and his existing injury. Latona recognized that officials told him they must verify his diagnosis, but he questioned why officials could not look at his medical records from his prior incarceration at the

2

prison in January 2006.[3]

On October 10, 2006, Latona submitted another medical request form stating that his mental health and medical problems, including esophagitis/reflux and knee, jaw, back, and rib pain, were getting worse. He wrote that he had been vomiting extremely hard late at night since October 6 and that he had reflux after each meal. Latona further stated that he needed his bi-polar medications as soon as possible. Latona also submitted a second medical request form that day, noting that he had been without his medications for esophagitis/reflux and his knee, jaw, back, and ribs for one week.

George met with Latona on October 10, 2006, and made a note to follow-up with "Medical Records; Inmate signed ROI [release of information] to expedite his services. Wants back on his psych meds badly." Ex. 4 at 000139. That same day, George was sent an email message from an individual named Bernice Smith stating:

> Mr. Latona got here on 10-05-06 and was seen by MHC on 10-05-06 per Dep. Warden Kinnane due to the fact that he was acting peculiar and had a prior attempted suicide by hanging in 2000. We 'suspected' based upon his actions to err on the side of safety (if it was bizarre behavior due to drug usage) and I placed him on a withdrawal watch which would give the Medical Dept time to obtain his records (Even though he brought his records with him and they are in his property bin) and he would be able to safely come off of any street drugs that he may have in his system. I then saw Mr. Latona on 10-10-06 and he was getting angry due to the fact that no one has given him his medications. I re-explained to him that I must put him in front of Treatment Team and have him Okayed by Treatment Team

---

[3]The record reflects that Latona was incarcerated at the prison in January 2006. His medical records from his earlier incarceration show his diagnoses with bi-polar disorder and GERD and the various medications that he was taking at that time.

3

to see the Psychiatrist once I obtain the medical records. Well, 10/05/06 was a Thursday, I faxed his records to New York and I didn't get the records back until Monday [October 9] and this Friday is when he will be presented to Treatment Team. There is nothing I can do about this and Mr. Latona is threatening all kinds of silly things in his Request Slips because he thinks that I am ignoring him. I know that he wants his medication, he just needs to be patient. I am sure that Treatment Team will approve him but I can't usurp the Treatment Team and place him on Dr. Kohn's list.

Ex. 4 at 000133.

On October 11, 2006, a note signed by Nurse Perry stated that Latona had vomited large amounts of liquid into the toilet and complained of nausea. Latona told the nurse he had not received his Nexium or psychiatric medications since he arrived. Nurse Perry noted that Latona had a history of GERD and that he saw George earlier that day. Nurse Perry wrote that Latona appeared to be a "chronically mentally ill individual in [illegible] remission. Will try to get him seen medically later today." Ex. 4 at 000107.[4]

George met with Latona again on October 13, 2006. In her notes, George stated that the medical department was aware of his recent bodily injuries and that Latona told her that he vomited all of his food every meal. George noted that Latona wanted to see the psychiatrist as soon as possible. Although the Mental Health Treatment Team

---

[4]On October 12, 2006, Latona received a response to his medical request forms from a different nurse stating that he had been placed on doctor's call for his complaint of acid reflux. On October 13, 2006, Latona completed a medical request form at 11:30 p.m. stating that he again was getting sick after a meal or at bedtime because of the lack of medication for his esophagitis/reflux and that his illness had been witnessed by correctional officers. On October 14, 2006, Latona received a response from another nurse stating that he would see a doctor on October 23, 2006.

approved Latona for psychiatric services on October 13, 2006, he did not see a doctor until October 19, 2006, when he was prescribed psychiatric medications and medications for acid reflux and pain. Latona was released from Erie County Prison on November 4, 2006.

In order to establish a violation of Latona's constitutional right to adequate medical care, evidence must show a serious medical need and acts or omissions by prison officials that indicate deliberate indifference to that need. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The official must be "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draw the inference." Id. We have found deliberate indifference where there was objective evidence that prison officials ignored evidence of a serious need for medical care and where necessary medical treatment was delayed for non-medical reasons. Id.

In granting summary judgment for Wnek and George, the District Court concluded that their actions did not rise to the level of deliberate indifference.[5] The District Court

---

[5]Wnek and George appear to concede that Latona's diagnoses with GERD and bi-polar disorder and the injuries he sustained in a fall constitute "serious medical needs." See also Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (explaining a medical need is "serious" if it is has been diagnosed by a physician as requiring treatment). We agree with the District Court that the dispositive

did not err in concluding that Wnek is entitled to summary judgment. Wnek only took Latona's medical history and did a medical screening upon his arrival. There is no evidence showing that she was aware that he needed immediate medical attention. There is also no evidence showing that Wnek had any further contact with Latona after his initial interview or that she played any role in the delay in his treatment.

We also agree with the District Court that Latona is unable to establish that George was deliberately indifferent to his mental health needs. Although George had ongoing contact with Latona during his incarceration and was a member of the Mental Health Treatment Team apparently responsible for arranging treatment by a doctor, the record does not reflect that George was aware of a substantial risk of serious harm by the delay in treatment. George was apprised of the medications that Latona was taking before his arrival at the prison, but George attested that she did not see "acute signs of mental deterioration" while Latona was on regular watch status. Ex. 2 to Def. Br. in Support of Motion for Summary Judgment. Absent from the record is evidence demonstrating that George saw Latona suffering or in distress.

---

question is whether prison health care providers acted with deliberate indifference in delaying treatment for these ailments. To the extent Latona pursues a claim based on a fever he allegedly had when he arrived at prison, we agree with the District Court's conclusion that Latona's fever, which was not present when he met with Wnek, did not constitute a serious medical need.

We recognize that in her notes of her contacts with Latona on October 5, October 10, and October 13, George did not place Latona "within normal limits" in several categories of assessment. Ex. 4 at 000137, 000139-140. George also attested that Latona was paranoid, argumentative, and agitated on October 13, 2006. While we do not condone the delay in treatment afforded to Latona, we conclude that these medical records fall short of establishing that George was deliberately indifferent to Latona's mental health needs. To the extent Latona also complains that George was deliberately indifferent to his need for treatment for his physical medical issues, including GERD and his fall-related injuries, there is no evidence that George, a Mental Health Counselor, was aware that Latona had been vomiting or was in physical pain. Although Latona complained to George that he was vomiting, George was at best negligent for not investigating his complaint with other staff members.[6]

To the extent Latona argues in his brief that the District Court erred in denying his motion to file a Fourth Amended Complaint in order to add Jeffrey Barninger, a Medical Administrator and member of the Mental Health Treatment Team, as a defendant, Latona did not aver that Barninger was deliberately indifferent to his medical needs. He only alleged in his proposed amended complaint that Barninger should have been aware of the

---

[6]The District Court also adopted the Magistrate Judge's recommendation to dismiss Latona's claims that PHS failed to adequately train and supervise its employees for failure to state a claim upon which relief may be granted. Latona does not address these claims in his opening brief on appeal and they are waived. F.D.I.C. v. Deglau, 207 F.3d 153, 169 (3d Cir. 2000).

7

delays in treatment based on his position. Given the late stage of the litigation and the inadequacy of these allegations, the District Court did not abuse its discretion in denying Latona's motion to amend.[7]

Accordingly, we will affirm the judgment of the District Court.

---

[7]Because Latona did not state an Eighth Amendment claim against Barninger, we do not consider the District Court's additional reasons for denying Latona's motion for leave to add him as a defendant. Latona further argues in his brief that the District Court erred in dismissing the "John Doe" defendants from his complaint, explaining that at the time of dismissal he had yet to receive responses to his discovery requests regarding the proper defendants. Even assuming the dismissal was improper, Latona was not prejudiced as he only sought to add Barninger as a defendant in his proposed Fourth Amended Complaint, which he filed after the defendants responded to his discovery requests.