# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GERARD E. SZUBIELSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0034-PWG |
| | ) | |
| CENTURION, JOHN P. MAY, NP | ) | |
| LORETTA HIGGINS, and NP SHERRI | ) | |
| McAFEE-GARNER, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MASTER'S REPORT</u>

Date Submitted:      April 7, 2022
Final Report:        July 19, 2022

Gerard E. Szubielski, Georgetown, Delaware, *Pro Se*

Scott G. Wilcox, Esq., MOORE & RUTT, P.A., Wilmington, Delaware, *Attorney for Defendants*

**GRIFFIN, M.**

Pending before me is an action filed by plaintiff, a prisoner at a state facility, claiming that the defendants, medical providers at that facility, acted with deliberate indifference to his medical needs in violation of the Eighth Amendment to the United States Constitution. Plaintiff alleges that defendants discontinued previous accommodations to treat his chronic neck and back pain and failed to provide necessary treatment by pain specialists outside of the facility. Defendants refute plaintiff's Eighth Amendment claim. Plaintiff and defendants filed cross-motions for summary judgment. I find that the undisputed facts do not support plaintiff's claims and defendants are entitled to judgment as a matter of law. Therefore, I recommend that the Court grant summary judgment in defendants' favor. This is a final report.

## I. Background[1]

*A. Factual Background*

Plaintiff Gerard E. Szubielski ("Szubielski") is an inmate presently incarcerated at Sussex Correctional Institution ("SCI"), part of the Delaware Department of Corrections ("DDOC"), in Georgetown, Delaware.[2] Defendant

---

[1] In this Report, I refer to the transcript of the March 26, 2021 hearing on Plaintiff's Motion for a Temporary Restraining Order as "TRO Tr." *See* Docket Item ("D.I.") 68. I refer to the medical exhibits appended as Exhibit A to D.I. 48 by the Bates stamp numbers found at the bottom right of the exhibit pages, which begin with CENT008.

[2] D.I. 48, at 4.

Centurion ("Centurion") is the contractor who has provided medical services at SCI since March of 2020.[3] Defendant John P. May ("May") is Centurion's chief medical officer.[4] Defendant NP Loretta Higgins ("Higgins") is a nurse practitioner who works for Centurion at SCI.[5] Defendant NP Sheri McAfee-Garner ("McAfee-Garner") is a nurse practitioner who works for Centurion at SCI.[6]

In or around 2012, Szubielski began experiencing severe headaches and neck pain.[7] On November 30, 2016, Szubielski underwent spinal fusion surgery.[8] Since then, Szubielski has continued to experience neck and back pain.[9] In May 2018, Szubielski was referred to an outside pain management specialist for a consultation regarding his chronic neck pain.[10] Szubielski alleges he was approved to receive the injections on October 23, 2018,[11] but that treatment never took place.[12] At some

---

[3] D.I. 69, at 2; D.I. 72, at 4 n.1. Although named as "Centurion" in the complaint, the entity is Centurion of Delaware, LLC. *See* D.I. 10, at 2.

[4] *See* D.I. 48, Ex. B, ¶ 1 (Unsworn Declaration of Dennis Kondash, D.O.) [hereinafter "Kondash Decl."].

[5] TRO Tr. 5:23-24.

[6] TRO Tr. 5:22-23. Centurion, May, Higgins, and McAfee-Garner are collectively referred to as "Defendants."

[7] D.I. 3, at 1.

[8] *Id.*, at 2; D.I. 48, at 4; D.I. 69, at 2.

[9] D.I. 3, at 2; D.I. 48, at 4.

[10] D.I. 48, at 4; D.I. 69, at 2.

[11] D.I. 3, at 2; D.I. 69, at 2.

[12] D.I. 3, at 2-3.

point, Szubielski received approval for a special mattress, a neck roll, and bottom bunk accommodations for medical reasons.[13]

On October 10, 2019, McAfee-Garner discontinued the special mattress because of Szubielski's "medical discharge."[14] On December 6, 2019, Higgins prescribed naproxen for Szubielski for pain.[15] Beginning in March of 2020, the DDOC and/or Centurion instituted a policy that limited off-site consultations due to COVID-19 pandemic-related restrictions.[16] After Centurion took over as medical provider, Szubielski's neck roll and bottom bunk accommodation were taken away.[17]

There are several sick calls (written requests for medical treatment) in March and April of 2020 from Szubielski requesting that his ibuprofen (pain medication) be renewed.[18] On March 30, 2020, McAfee-Garner responded to a sick call from Szubielski, who reported pain, and recommended that Szubielski restart a different pain medication.[19] On April 24, 2020, Szubielski asked to see an outside provider

---

[13] *See id.*, at 3.

[14] CENT176.

[15] CENT008.

[16] Kondash Decl., ¶ 42; D.I. 69, at 2-3 ("From March 2020 until mid-2021 Centurion refused to send [Szubielski] out for any medical care …"); *see infra* note 89.

[17] D.I. 3, at 3.

[18] CENT079; CENT083; CENT084.

[19] Kondash Decl., ¶ 17.

for pain management, and Higgins responded that no outside appointments were taking place due to COVID-19 restrictions and renewed his ibuprofen. [20]

On May 15, 2020, Higgins responded to a sick call from Szubielski, in which he expressed concern that there had been no follow up with the outside pain specialist and his neck roll and special mattress had been taken away when he was transferred to SCI.[21] Her notes state that "there is no medical indication for neck roll at present."[22] She increased his ibuprofen dosage, and also discussed the outside pain specialist with Szubielski, explaining that no outside provider appointments were being made at that time.[23] She also noted that "Per medical director comments – [Szubielski] made significant improvement following treatment and no further outside treatment [was] necessary."[24]

On June 11, 2020, Higgins responded to a sick call from Szubielski.[25] Szubielski was refusing his diabetes medication and, during this interaction, he again indicated that he wanted to see an outside specialist.[26] Higgins performed an extensive chart review, noting that further review by the medical director regarding

---

[20] CENT084; CENT094.

[21] D.I. 73, Ex. A.

[22] *Id*.

[23] *Id.*

[24] *Id*.; *see also* Kondash Decl., ¶ 22.

[25] D.I. 73, Ex. A.

[26] *Id*.; *see also* Kondash Decl., ¶ 26.

the existing pain management consultation was "mostly liked need[ed]," and that he should "continue to [be] follow[ed] closely."[27] On July 14, 2020, McAfee-Garner reviewed the results from Szubielski's COVID test,[28] and on September 10, 2020, Higgins received a medical report on Szubielski.[29] In August and September of 2020, Szubielski filed sick calls seeking an outside pain management consultation.[30] On March 11, 2021, Szubielski was referred for pain management consultation and a MRI, and was approved for bottom bunk accommodation.[31] On or around April 22, 2021, it appears Szubielski had a neuro-spine consultation, and an outside pain management consultation on April 29, 2021, in which he was prescribed pain medication, which was given to Szubielski by McAfee-Garner on that date, and a neck roll, which he received on July 26, 2021.[32] On September 8, 2021, Szubielski

---

[27] D.I. 73, Ex. A.

[28] *Id.*

[29] CENT115.

[30] CENT114; CENT129. Szubielski also sought medical clearance on October 4, 2020 so that he could "work in the main kitchen." CENT127.

[31] CENT171; *see also* CENT172. It appears that Szubielski had a Xray on March 17, 2021, which showed "no acute problem" and physical therapy was recommended. D.I. 73, Ex. A.

[32] CENT168-CENT170; *see also* D.I. 73, Ex. A. On April 22, 2021, it appears that McAfee-Garner asked questions of the specialist about how to treat Szubielski's pain. D.I. 73, Ex. A. During the outside pain management consultation on April 29, 2021, a follow up appointment was recommended regarding "possible injections." CENT170. Szubielski initially refused the neck roll on July 16, 2021. CENT174.

again saw an outside medical provider, who recommended pain injections.[33]

Szubielski's grievance requesting offsite pain injections was upheld by the Bureau

Chief on January 26, 2022, with the note that they "have no control over how soon

an appointment can be secured."[34]

## B. Procedural History

Szubielski filed the Complaint ("Complaint") on January 14, 2021, with a

Motion to Expedite, requesting a temporary restraining order ("TRO") to compel

Defendants to send him for an outside pain management consultation.[35]  In the

Complaint, he argues that Defendants violated his Eighth Amendment rights by

failing to provide him with proper medical care for his neck and back pain, and seeks

injunctive relief and damages.[36]  On March 26, 2021, Vice Chancellor Glasscock

heard and denied the TRO motion.[37]

---

[33] D.I. 73, Ex. A.  It appears that Szubielski was also "seen by pain management" on June 23, 2021, and August 19, 2021. *Id.*

[34] D.I. 59, Ex. C.

[35] D.I. 3; D.I. 4.  Szubielski's application to proceed *in forma pauperis* was granted on January 27, 2021. D.I. 7.

[36] D.I. 3.

[37] *See* D.I. 26.  Vice Chancellor Glasscock held that, the Court could not grant the TRO motion because it requested mandatory relief. TRO Tr. 30:14-31:21.

On May 10, 2021, Szubielski moved for the appointment of counsel,[38] which the Court denied on May 21, 2021.[39]  A status conference was held on June 15, 2021.[40]  Defendants filed their answer on June 29, 2021.[41]  The Court entered a scheduling order on September 17, 2021, setting trial for April 28, 2022.[42]  On December 6, 2021, Szubielski filed a renewed motion to appoint counsel, which was denied on December 21, 2021.[43]

On January 10, 2021, Defendants filed a Motion for Summary Judgment ("Motion"), seeking dismissal of the Complaint.[44]  Following scheduling issues,[45] a new scheduling order was entered, on January 31, 2022, to address briefing on the Motion.[46]  Szubielski filed an answering brief to the Motion on February 2, 2022,[47] and his Motion for Summary Judgment ("Cross-Motion") on March 2, 2022, asking

---

[38] D.I. 30.

[39] D.I. 32.

[40] D.I. 33.

[41] D.I. 35.  On July 9, 2021, the Court granted a limited stay due to Szubielski's temporary relocation within the DDOC system.  D.I. 37.

[42] D.I. 42.

[43] D.I. 43; D.I. 45.  Exceptions to that report were stayed. *Id*., at 5.

[44] D.I. 48.  The Motion seeks only dismissal of the Complaint and did not seek attorneys' fees or other relief. *Id*.

[45] *See* D.I. 50; D.I. 51; D.I. 52; D.I. 53; D.I. 54; D.I. 55; D.I. 56; D.I. 57.

[46] D.I. 58.

[47] D.I. 59.

the Court to find Defendants liable on his Eighth Amendment claim.[48]  On March 24, 2022, Defendants filed a reply brief in support of the Motion and in opposition to the Cross-Motion.[49]  On March 25, 2022, Szubielski filed a motion to admit additional documents,[50] which I interpreted as a request to supplement the Cross-Motion.[51]  Defendants filed a reply brief to Szubielski's supplemental submission on April 7, 2022.[52]

## II.    Standard of Review

Summary judgment is appropriate only where "the moving party demonstrates the absence of issues of material fact and that it is entitled to judgment as a matter of law."[53]  Evidence must be viewed "in the light most favorable to the non-moving party."[54]  Summary judgment may not be granted when material issues of fact exist

---

[48] D.I. 69.  The Cross-Motion asks the Court to grant summary judgment on liability and leave the damages issue for trial. *Id*., at 6-7.

[49] D.I. 72.

[50] D.I. 73.

[51] D.I. 74.

[52] D.I. 75.

[53] *Wagamon v. Dolan*, 2012 WL 1388847, at *2 (Del. Ch. Apr. 20, 2012); *see also Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *2 (Del. Ch. Sept. 3, 1996), *aff'd,* 692 A.2d 411 (Del. 1997).

[54] *Williams v. Geier*, 671 A.2d 1368, 1375-76 (Del. 1996) (citing *Bershad v. Curtiss-Wright Corp.*, 535 A.2d 841, 844 (Del. 1987)).

or if the Court determines that it "seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances."[55]

When the Court is presented with cross-motions for summary judgment, the Court may "deem the motions to be the equivalent of a stipulation for decision,"[56] but "[t]he existence of cross-motions … does [not] change the standard for summary judgment."[57]   In evaluating cross-motions for summary judgment, the court examines each motion independently and only grants a motion for summary judgment to one of the parties when there is no disputed issue of material fact and that party is entitled to judgment as a matter of law.[58]

## III.    Analysis

### A.  Szubielski's Rule 56(f) Motion

Szubielski argued, in his answering brief, that the Motion should be dismissed because discovery was not completed – Defendants had failed to make themselves available for depositions or to turn over all medical records.[59]  Although not framed

---

[55] *In re Est. of Turner*, 2004 WL 74473, at *4 (Del. Ch. Jan. 9, 2004) (quoting *Holladay v. Patten*, 1995 WL 54437, at *3 (Del. Ch. Jan. 4, 1993)) (internal quotation marks omitted); *see also Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).

[56] Ct. Ch. R. 56(h).

[57] *Bernstein v. Tact Manager, Inc.*, 953 A.2d 1003, 1007 (Del. Ch. 2007).

[58] *See Empire of Am. Relocation Servs., Inc. v. Commercial Credit Co.*, 551 A.2d 433, 435 (Del. 1988); *Wimbledon Fund LP v. SV Special Situations LP*, 2011 WL 378827, at *7 (Del. Ch. Feb. 4, 2011).

[59] D.I. 59, at 5.

9

as a Court of Chancery Rule 56(f) motion, I allow leniency because Szubielski is acting *pro se* and consider his request as a Rule 56(f) motion.[60] A Rule 56(f) motion to delay consideration of a motion for summary judgment rests within the trial court's discretion.[61] "The invoking party carries the burden under Rule 56(f) to show that it could not present facts essential to oppose the motion for summary judgment."[62]

Szubielski made multiple requests for extensions of time for discovery and briefing,[63] which were granted.[64] Discovery in this matter ran from at least September 14, 2021 until March 1, 2022.[65] Szubielski had the opportunity to take depositions during the discovery period. A review of the docket in this matter shows that Szubielski did not serve a notice of deposition on any of the parties in this matter.[66] And, he chose to proceed with the Cross-Motion and to supplement the

---

[60] Ct. Ch. R. 56(f). Szubielski cited to *Ingle v. Yelton*, 439 F.3d 191, 196 (4th Cir. 2006). D.I. 59, at 5. In *Ingle*, the plaintiff filed a motion under Federal Rules of Civil Procedure 56(f), requesting additional time to conduct discovery. *Ingle*, 439 F.3d at 196.

[61] *See Schillinger Genetics, Inc. v. Benson Hill Seeds, Inc.*, 2021 WL 320723, at *16 (Del. Ch. Feb. 1, 2021).

[62] *Id.* (citation omitted).

[63] *See* D.I. 50; D.I. 56.

[64] D.I. 51; D.I. 58; *see also* D.I. 60; D.I. 61.

[65] D.I. 42; D.I. 58.

[66] On December 14, 2021, Szubielski filed a list of persons whom he wanted to depose, but did not indicate a time or place for depositions to occur. D.I. 44; *see* Ct. Ch. R. 30(b)(1) ("party desiring to take the deposition of any person … shall give reasonable notice [stating] the time and place for taking the deposition"). Szubielski requested a subpoena for Defendants' depositions on February 4, 2022, which was returned signed by the

Cross-Motion with extensive medical documentation.[67]  I deny Szubielski's Rule 56(f) motion because he has not shown that he could not present facts essential to opposing the Motion, without deposing Defendants.

## B. *Szubielski's Eighth Amendment Medical-Needs Claim against Defendants*

Szubielski claims that Defendants have acted with deliberate indifference to his medical needs in violation of the Eighth Amendment to the United States Constitution.  "The Eighth Amendment's protection against cruel and unusual punishment requires the government 'to provide medical care for those whom it is punishing by incarceration.'"[68]  To prove an Eighth Amendment medical-needs claim, the "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."[69]  "Deliberate indifference requires subjective culpability: the [actor] must both be aware of facts from which the inference could be drawn that a substantial risk of

---

Register in Chancery on February 4, 2022.  D.I. 62; D.I. 63.  However, these subpoenas did not instruct the Defendants where and when to appear for a deposition, *see* D.I. 62, and there is no indication on the docket that these subpoenas were ever served upon the Defendants.

[67] *See* D.I. 69; D.I. 73.

[68] *Szubielski v. Correct Care Sols., LLC*, 2014 WL 5500229, at *2 (Del. Ch. Oct. 31, 2014) (citing *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).

[69] *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2015) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003)) (internal quotation marks omitted); *see also Szubielski*, 2014 WL 5500229, at *2 ("To succeed on an Eighth Amendment claim, a plaintiff bears the burden of proving a serious medical need as well as the defendant's deliberate indifference in response.") (citation omitted).

serious harm exists, and he must also draw the inference."[70] "[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners."[71] "Allegations of negligence or challenges of a physician's professional judgment do not state a claim."[72]

The Third Circuit has "found 'deliberate indifference' in a variety of circumstances, including where a prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."[73]

First, "a plaintiff asserting an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 must establish that a person acting under color of state law violated his rights."[74] "Courts have found that 'when the state contracts out its medical care of inmates, the obligations of the [E]ighth [A]mendment attach to the persons with

---

[70] *Szubielski*, 2014 WL 5500229, at *2 (internal quotation marks and citation omitted) (alteration in original).

[71] *Parkell*, 833 F.3d at 337 (quoting *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)); *Jarvis v. May*, 2022 WL 2131975, at *3 (D. Del. June 14, 2022) ("while Plaintiff may wish to see an outside ophthalmologist, disagreement with medical care does not rise to the level of a constitutional claim").

[72] *Szubielski*, 2014 WL 5500229, at *2 (citation omitted); *see also Parkell*, 833 F.3d at 337 ("A prisoner bringing a medical-needs claim 'must show more than negligence; he must show "deliberate indifference" to a serious medical need.'") (quoting *Durmer*, 991 F.2d at 67); *Sims v. Wexford Health Sources*, 635 F. App'x 16, 19 (3d Cir. 2015).

[73] *Parkell*, 833 F.3d at 337 (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

[74] *Szubielski*, 2014 WL 5500229, at *3 (citing *Natale*, 318 F.3d at 580-81).

whom the state contracts.'"[75]  Here, Defendants are contractors providing medical services to SCI.

Next, I consider whether Szubielski has shown a serious medical need. "Courts have held that to show a serious medical need, a plaintiff must demonstrat[e] that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."[76]  For purposes of this analysis, I assume without deciding that Szubielski had a serious medical need caused by his long-term pain issues.  The remaining legal questions focus on whether Defendants acted with deliberate indifference to that need.

1. <u>Centurion Did Not Act with Deliberate Indifference to Szubielski's Medical Needs.</u>

I first consider whether Centurion, a contractor providing medical services at SCI, acted with deliberate indifference to Szubielski's medical needs.  "One who brings a § 1983 claim against a private contractor also must address causation;

---

[75] *Id.* (citations omitted) (alterations in original).

[76] *Id.* (internal quotation marks and citation omitted).  "While some courts have deemed a medical need serious when it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, the Third Circuit Court of Appeals requires expert testimony when the seriousness of the injury or illness would not be apparent to a lay person." *Id.* (internal quotation marks and citations omitted).  Defendants argue that Szubielski's injuries are "not so apparent that they would be evident to a layperson," so he must present expert evidence. D.I. 48, at 14.  Since I assume, without deciding, that Szubielski has shown he had a serious medical need, I do not address this issue.

*respondeat superior* does not suffice for liability."[77] "A plaintiff establishes causation by showing that the [contractor] had a policy or custom that caused the violation,"[78] and that it "turned a blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights" such that it, as a policymaker, "can reasonably be said to have been deliberately indifferent to the need."[79]

Centurion argues that the evidence at summary judgment fails to identify any policy or practice of Centurion showing its deliberate indifference.[80] Szubielski responds that the evidence shows Centurion employees acted with deliberate indifference to his medical needs.[81] However, Szubielski must show that Centurion, as a policy maker, had a policy or custom that was deliberately indifferent.[82]

---

[77] *Szubielski*, 2014 WL 5500229, at *4 (citations omitted); *see also Parkell*, 833 F.3d at 338 ("[Medical contractors for DDOC] cannot be held responsible for the acts of [their] employees under a theory of respondeat superior or vicarious liability.") (internal quotation marks and citations omitted); *Sims*, 635 F. App'x at 20 (citation omitted).

[78] *Szubielski*, 2014 WL 5500229, at *4.

[79] *Parkell*, 833 F.3d at 338 (cleaned up).

[80] D.I. 48, at 15-16.

[81] D.I. 59.

[82] "A policy is a final proclamation, policy or edict issued by one with final policymaking authority, and a custom is an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Szubielski*, 2014 WL 5500229, at *4 n. 42 (cleaned up).

A focus of Szubielski's claims is Centurion's failure to send him for outside pain management consultation. During the time the evidence shows he repeatedly asked to be sent for outside consultation (starting in March of 2020), there was a policy in place of not sending inmates to outside care providers because of the COVID-19 pandemic.[83] This policy was put into place to limit "movement within and from the facilities," and restricted off-site consultations, in order to control the spread of COVID-19.[84] Courts have found delays in medical treatment due to restrictions based upon the COVID-19 pandemic are reasonable and are not deliberately indifferent under the Eighth Amendment.[85] Thus, as a matter of law, the undisputed evidence shows that neither the policy nor Centurion were deliberately indifferent toward Szubielski's medical needs, and I recommend that the Court grant summary judgment Centurion's favor.[86]

---

[83] *See* Kondash Decl., ¶¶ 20, 42. Centurion contends that the policy of not sending inmates to outside care providers was established by DDOC and not by Centurion, and cannot serve as a basis for an Eighth Amendment Claim against Centurion. D.I. 48, at 16 n. 4. For purposes of the summary judgment motions, I assume that Centurion established this COVID-related policy and do not decide who established the policy.

[84] Kondash Decl., ¶ 42.

[85] *See Jones v. Sorbu*, 2021 WL 365853, at *6 (E.D. Pa. Feb. 3, 2021); *Keating v. Meade*, 2021 WL 120944, at *5 (E.D. Va. Jan. 12, 2021); *Perez v. Chester CI*, 2020 WL 7384888, at *6 (E.D. Pa. Dec. 16, 2020); *cf. Francis v. Carroll*, 773 F. Supp. 2d 483, 487 (D. Del. 2011).

[86] I note that, since March of 2021, Szubielski has had outside pain management and neuro-spine consultations, which resulted in his receiving a neck roll and bottom bunk accommodation. *See supra* notes 31-34. Pain injections were recommended by the outside

## 2. May did not Act with Deliberate Indifference to Szubielski's Medical Needs.

Next, I address whether May acted with deliberate indifference to Szubielski's medical needs. Although May was named as a party to this lawsuit, the Complaint does not plead how May was connected to Szubielski's medical care.[87] The parties did not address May's conduct in the briefing. There is no evidence showing that May treated Szubielski or made any decisions about Szubielski's care.[88] It appears that May be included as a defendant because of his position as Centurion's chief medical officer.[89] "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."[90] Or, "[i]ndividual defendants who are policymakers may be liable under §1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which

---

specialist in September of 2021 and have been sought, although it appears that, as of March 24, 2022, Szubielski had not yet received those injections. *See supra* note 34; D.I. 72, at 5.

[87] *See* D.I. 3.

[88] *See* D.I. 48, Ex. A; D.I. 73, Ex. A.

[89] *See* Kondash Decl., ¶ 1.

[90] *Covert v. Houser*, 2021 WL 602721, at *4 (M.D. Pa. Feb. 16, 2021) (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004); *see also Diaz v. Pistro*, 2021 WL 3471169, at *2 (E.D. Pa. Aug. 6, 2021) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *Deputy v. Roy*, 2003 WL 367827, at *2 (Del. Super. Feb. 20, 2003) ("To establish a Section 1983 claim, the plaintiff must show the defendant's personal involvement in the alleged constitutional violation.").

16

directly caused [the] constitutional harm."[91]  There is no evidence in the record that May personally participated in violating Szubielski's rights, directed others to do so, knew of and tolerated a subordinate's violation, or implemented or maintained a policy or practice that directly caused an Eighth Amendment violation against Szubielski.  Thus, there is no evidence to support a finding that May was deliberately indifferent to Szubielski's medical needs, and I recommend that the Court grant summary judgment in May's favor.

3. Higgins did not Act with Deliberate Indifference to Szubielski's Medical Needs.

In his answering brief, Szubielski contends that Higgins acted with deliberate indifference to his medical needs by denying him a medical pillow, bottom bunk accommodation, and approved pain management treatment.[92]  Defendants do not address claims against Higgins specifically but argue that the undisputed facts do not support a reasonable inference of Eighth Amendment deliberate indifference.[93]

I focus on the legal question of whether Higgins acted, through her personal involvement, with deliberate indifference to Szubielski's medical needs.  The undisputed facts show that Higgins was one of the nurses who saw Szubielski

---

[91] *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d at 586 (internal quotation marks and citation omitted); *see also Thorpe v. Little*, 804 F. Supp. 2d 174, 184 (D. Del. 2011).

[92] D.I. 59, at 6.

[93] D.I. 48, at 9-14.

somewhat regularly.[94]   In the spring of 2020, Higgins responded to several of Szubielski's sick calls.[95]   In separate visits on April 24, 2020, May 15, 2020, and June 11, 2020, Szubielski told Higgins that he was not receiving pain management treatment according to the instructions of an outside specialist, and that he wanted to see the outside specialist again.[96]   Higgins informed Szubielski that due to the COVID-19 pandemic, no outside appointments were being made.[97]   Specifically, after the April 24, 2020 sick call, Szubielski was told, "[y]our request has been received and will remain unprocessed until normal operations resumed [sic]."[98] Higgins noted that "there is no medical indication for neck roll at present."[99]   She also reviewed Szubielski's medical history and discussed a plan of care with him.[100]

Based upon these undisputed facts, the evidence does not support that Higgins acted with deliberate indifference toward Szubielski.  While she denied Szubielski the visit to the outside specialist, the reason for that denial was due to COVID-19 pandemic-related restrictions.  And, courts have found that delays in medical treatment due to restrictions based upon the COVID-19 pandemic are reasonable

---

[94] *See* D.I. 48, Exs. A, B; D.I. 73, Ex. A.

[95] *See* CENT094; Kondash Decl., ¶¶ 22, 26; D.I. 73, Ex. A.

[96] *See* CENT094; D.I. 73, Ex. A.

[97] *See* CENT094; D.I. 73, Ex. A.

[98] *See* CENT094.

[99] D.I. 73, Ex. A.

[100] *See* CENT094; D.I. 73, Ex. A.

under the Eighth Amendment's deliberate indifference standard.[101] With respect to Higgins' judgment about Szubielski's neck roll, Szubielski may disagree with her assessment, but challenging her professional judgment is not actionable under the Eighth Amendment where the evidence shows that Higgins reviewed Szubielski's medical records and reasonably reached that conclusion.[102] The undisputed facts do not support a finding that Higgins was deliberately indifferent to Szubielski's medical needs, and I recommend that the Court grant summary judgment in Higgins' favor.

4. <u>McAfee-Garner did not Act with Deliberate Indifference to Szubielski's Medical Needs.</u>

In his answering brief, Szubielski contends that McAfee-Garner, like Higgins, acted with deliberate indifference to his medical needs by denying him a medical pillow, bottom bunk accommodation, and approved pain management treatment.[103] He points to McAfee-Garner's October 10, 2019 physician's order discontinuing his special mattress shortly after he was transferred to SCI as proof of deliberate indifference.[104] Defendants contend that Szubielski's arguments merely amount to

---

[101] *See supra* note 85.

[102] *See Thorpe v. Little*, 804 F. Supp. 2d 174, 183 (D. Del. 2011) ("'a prisoner has no right to choose a specific form of medical treatment,' so long as the treatment provided is reasonable") (citation omitted); *Szubielski v. Correct Care Sols., LLC*, 2014 WL 5500229, at *2 (Del. Ch. Oct. 31, 2014).

[103] D.I. 59, at 6.

[104] *Id.*, at 3.

a disagreement with his medical treatment, and McAfee-Garner determined on October 10, 2019 that the special mattress was no longer medically necessary in the course of the medical discharge.[105] Further, they assert that Szubielski has not shown through "a subsequent order from any outside specialist" that a special mattress remains necessary.[106]

The remaining legal question is whether McAfee-Garner acted with deliberate indifference to Szubielski's medical needs. Specifically, I consider whether she knew of Szubielski's need for medical treatment and intentionally refused to provide it, delayed necessary medical treatment based on a non-medical reason, or prevented him from receiving needed or recommended medical treatment.[107] The undisputed facts show that McAfee-Garner was one of the nurses who saw Szubielski periodically.[108] Szubielski alleges that a medical provider had previously determined that the special mattress and bottom bunk accommodation were necessary and that McAfee-Garner revoked those medical allowances without explaining her reasons or consulting with the previous medical providers.[109] But to

---

[105] D.I. 72, at 2-6.

[106] *Id.*, at 4.

[107] *See supra* note 73 and accompanying text.

[108] *See* D.I. 48, Exs. A, B; D.I. 73, Ex. A.

[109] D.I. 59, at 3.

20

be actionable under the Eighth Amendment, Szubielski must show more than a disagreement with a medical professional's judgment or negligence.[110]

Here, the evidence shows that McAfee-Garner made a general medical discharge as part of her physician's order dated October 10, 2019.[111] Szubielski disagrees with her judgment and argues that the timing of her physician's order, which occurred shortly after a transfer within the Department of Corrections, is suspect.[112] However, his disagreement is not actionable under the United States Constitution. Where a physician capable of evaluating a need for medical treatment has made an informed judgment, courts will not second-guess that judgment.[113] This is not a circumstance where prison officials have arbitrarily and without the exercise of professional medical judgment denied previously recommended treatment.[114] Further, the record does not indicate McAfee-Garner's personal involvement with regard to Szubielski's other claims. Thus, the evidence does not support a finding that McAfee-Garner was deliberately indifferent to Szubielski's medical needs, and I recommend that the Court grant summary judgment in McAfee-Garner's favor.

---

[110] *See Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2015); *supra* note 72 and accompanying text.

[111] D.I. 59, Ex. A.

[112] *Id.*, at 5-6.

[113] *See Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (citation omitted).

[114] *See id*.

## C. Szubielski's Negligence Claim

In his answering brief, Szubielski asserts that there is a negligence claim in this litigation.[115] Defendants respond that any medical negligence claim that Szubielski may have fails as a matter of law.[116] The Complaint does not identify a medical negligence claim and discusses only Szubielski's Eighth Amendment medical-needs claim.[117] Further, the Superior Court has exclusive jurisdiction over civil actions alleging health care medical negligence.[118] Thus, even if a health care medical negligence claim was properly pleaded, the Court of Chancery has no subject matter jurisdiction over such a claim. Accordingly, I dismiss any health care medical negligence claim alleged by Szubielski without prejudice.

---

[115] D.I. 59, at 8.

[116] D.I. 72, at 6-8.

[117] D.I. 3. The Court of Chancery Rules require plaintiffs to give "a short and plain statement of the claim" so that the defendants have notice of what is being asserted. Ct. Ch. R. 8(a)(1). The Complaint provides no notice that a medical negligence claim was being pursued, even when considered with leniency because it is a *pro se* filing. *See Durham v. Grapetree LLC*, 2014 WL 1980335, at *5 (Del. Ch. May 16, 2014).

[118] 18 *Del. C.* § 6802(a); *see also Szubielski v. Correct Care Sols., LLC*, 2014 WL 5500229, at *2 n. 24 (Del. Ch. Oct. 31, 2014). Defendants argue that Szubielski failed to file an affidavit of merit signed by an expert witness in support of the negligence claim as required by 18 *Del. C.* §6853 and, as a result, is foreclosed from pursuing that claim. D.I. 72, at 6-8. Szubielski asserts that, because of his *in forma pauperis* status, there is an alternate process under 18 *Del. C.* §6853(e). D.I. 59, at 8. Since I find a health care medical negligence claim was not properly pleaded and that this Court does not have subject matter jurisdiction over such a claim, I do not address that issue.

## IV.    Conclusion

Based on the reasons set forth above, I find that there are no material factual disputes and Defendants are entitled to judgment on Szubielski's Eighth Amendment claim as a matter of law.  I recommend that the Court grant Defendants' Motion for Summary Judgment, deny Szubielski's Cross-Motion for Summary Judgment, and enter judgment in favor of Defendants.  This is a final master's report, and exceptions may be taken under Court of Chancery Rule 144.  The stay of exceptions on the December 21, 2021 Order is LIFTED; exceptions to that Order may be taken under Court of Chancery Rule 144.