CLD-102                                                          **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3213
_____

MICHAEL GINYARD, JR.,
                                                    Appellant

v.

LOUIS DEL-PRETE, Medical Clinic Manager at the Allegheny County Jail;
LAURA K. WILLIAMS, Chief Deputy Warden of Health Care
at the Allegheny County Jail; and ALLEGHENY HEALTH NETWORK,
Medical Care Provider at the Allegheny County Jail
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civil No. 2:20-cv-01947)
District Judge:  Honorable W. Scott Hardy
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
March 9, 2023
Before:  GREENAWAY, JR., MATEY, and FREEMAN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: June 13, 2023)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Pro se appellant Michael Ginyard, Jr., proceeding in forma pauperis, appeals from the District Court's judgment in favor of Defendants in this 42 U.S.C. § 1983 action. As the appeal does not present a substantial question, we will summarily affirm. See 3d Cir. L.A.R. 27.4; 3d Cir. I.O.P. 10.6.

I.

Ginyard initiated this federal civil rights action in 2020, claiming that Defendant Allegheny Health Network (AHN), a private company contracted by the Allegheny County Jail (ACJ), and Defendants Del-Prete, ACJ's medical clinic manager, and Williams, ACJ's chief deputy warden, acted with deliberate indifference to his serious medical needs in violation of his Eighth and Fourteenth Amendment rights.[1] During the time relevant to this litigation, Ginyard was incarcerated at ACJ.[2] Ginyard claimed to

---

[1] Deliberate indifference claims are typically brought under the Eighth Amendment, but, when the claimant is a pretrial detainee, such claims are raised pursuant to the Fourteenth Amendment's due process clause. Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003). The Report and Recommendation adopted by the District Court noted that it was unclear whether Ginyard was a pre-trial detainee, but that the distinction did not matter. As the same standard applies to deliberate indifference claims brought under the Eighth and Fourteenth Amendments, we evaluate Ginyard's claims under the standard used to evaluate claims brought under the Eighth Amendment.

[2] Ginyard was transferred to a different facility in 2021. In the absence of any evidence that there is a reasonable likelihood that Ginyard is likely to be incarcerated again at ACJ and subject to its COVID-19 mitigation policy, the District Court correctly dismissed Ginyard's claims for prospective relief. See Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3d Cir. 1993) (holding that a prisoner's release from incarceration mooted his claims for injunctive relief related to the prison's legal access policies).

2

have suffered severe foot pain over the course of six months that, despite his numerous and ongoing requests for medical care, Defendants failed to timely diagnose and treat. Ginyard also claimed that Defendants were deliberately indifferent to the substantial risk of harm caused by ACJ's COVID-19 mitigation policy, which closed the jail's medical clinic to most inmates and required that healthcare staff instead respond to non-emergency healthcare requests in the jail's housing units. He sought compensatory and punitive damages as well as a preliminary and permanent injunction ordering Defendants to establish a new policy.

Ginyard first complained of severe foot pain in June 2020. Medical records submitted by Ginyard show that he placed a sick call request on June 8. He declined an encounter with a sick call nurse on June 9, stating that he had already been seen. Ginyard spoke with a physician treating an inmate at his pod on June 11 and related his belief that his foot pain was potentially related to undiagnosed diabetes. The physician ordered new blood work.

Ginyard was next seen by medical staff—a physician assistant (PA)—on June 22, due to his blood-sugar concerns and a stinging pain in his left foot. The PA took his glucose levels, which were within normal limits, and indicated that she would check his a1c levels. Ginyard lodged a complaint that same day, noting that although medical staff were responding to his sick call requests, they were not scheduling him for the a1c testing that he needed. He claims that he submitted a grievance in relation to his need for a

blood draw on July 6. He states that the grievance was deemed invalid on July 22 and that he appealed that determination on the same date.[3]

Ginyard reiterated his complaint of foot pain to a licensed practical nurse on July 9, during medicine distribution at his pod. The nurse's notes indicate that she planned to schedule him with a provider for an evaluation. On July 13, Ginyard was treated by a PA, who provided him with a prescription for ibuprofen and a plan to check his vitamin D levels. On August 11, Ginyard spoke with medical staff during medication rounds, informing them that his a1c levels were ordered to be checked, but no arrangements had been made to do so. The next day, he was seen by a certified registered nurse practitioner (CRNP), who again reviewed his complaints of a stinging pain in his feet and his concerns related to the possibility that the pain was resulting from the onset of type-2 diabetes. The CNRP examined Ginyard and indicated that she would check his a1c levels. She noted that it was possible, but unlikely, that the pain was a side-effect of one of Ginyard's medications and that she would investigate this.

On August 19, Ginyard complained directly to Del-Prete, who gave Ginyard a request slip with his name on to submit if he was not seen within the next week. Ginyard was not seen, so, per Del-Prete's instructions, on August 30 Ginyard submitted the sick call request directed to Del-Prete. Ginyard was seen at sick call on September 1, again

---

[3] Because exhaustion of administrative remedies was not placed at issue in the District Court and the merits of the appeal do not present a substantial question, we do not address whether Ginyard administratively exhausted his claims.

requesting a1c level testing. No blood-draw appointment was made, and the nurse noted that Ginyard did not have a known history of pre-diabetes or diabetes. Ginyard directed two sick call requests to Williams on September 6 and 20, both indicating Ginyard's belief that his foot pain was a symptom of diabetes and requesting to be called to the clinic for a blood draw to check his a1c levels. Ginyard was seen by a CRNP and a PA on September 24 and again reiterated his frustration at not having the blood draw completed. The CRNP noted the possibility that Ginyard was pre-diabetic, that the lab test was ordered, and that she would follow up once the results were obtained. A licensed practical nurse noted on the September 30 that Ginyard was becoming increasingly frustrated and told him that he was on the list to see a provider.

A note entered by Williams on October 6 reported that Williams received a letter from Ginyard and that her review of his records indicated that he continued to wait on lab results. Williams' notes reflect that she emailed the provider organization to prioritize Ginyard's labs. On October 13, Ginyard's a1c levels were obtained. The testing showed that Ginyard was pre-diabetic; it was reviewed by medical staff on October 14. On November 10, Ginyard was informed of his lab results, prescribed vitamin D supplements, and ordered to have his bloodwork rechecked in two months. Ginyard continued to experience pain in his left foot and received treatment throughout the month of November both in relation to his pain and to create a plan to manage his pre-diabetes diagnosis.

5

The District Court dismissed Ginyard's claims against AHN for failure to state a claim and granted summary judgment in favor of Defendants Del-Prete and Williams. The Court also dismissed as moot Ginyard's claims for prospective relief. This timely appeal ensued.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and may summarily affirm the District Court's judgment if the appeal presents no substantial question. See 3d Cir. L.A.R. 27.4 and I.O.P. 10.6. We exercise de novo review of a district court's grant of summary judgment and a district court's dismissal of a complaint for failure to state a claim. Natale, 318 F.3d at 579, 580-81.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (cleaned up). The well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." Id. at 679.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for

6

summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

III.

To succeed on an Eighth Amendment inadequate medical care claim, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). For purposes of this Opinion, we assume without deciding that Ginyard sufficiently alleged a serious medical need.

The District Court properly dismissed Ginyard's claims against AHN. Ginyard's complaint alleges that AHN employees failed to timely diagnose and treat his severe foot pain because of a delay in scheduling a blood draw in the medical clinic. Ginyard claims that AHN itself is liable for the deliberate indifference of its employees because the delay in drawing his blood was caused by AHN's enforcement of the "clinic services" provision of ACJ's COVID-19 mitigation policy—embodied within the provisions of a Consent Order entered by the District Court for the Western District of Pennsylvania— that closed the medical clinic except "for necessary populations" and deployed health care staff to housing units "to perform non-emergency healthcare requests." Graham v. Allegheny Cty., No. 2:20-CV-00496, 2020 WL 2772398 at *14 (W.D. Pa. May 27,

7

2020). To support these claims, Ginyard averred that he repeatedly explained to medical staff that he thought his pain might be related to the onset of diabetes and believed a blood draw was necessary to check his a1c levels and test for diabetes; that the medical staff incorrectly informed him that nerve pain in the foot is not a symptom of diabetes; and that his symptoms presented an emergent medical need, especially because his lab results ultimately showed him to have pre-diabetes. Ginyard also claimed that AHN was aware that the clinic services provision of the Consent Order raised a substantial and unreasonable risk to inmate health and safety.

The allegations of his complaint indicate that although Ginyard consistently received medical attention related to the pain in his foot, it was not the kind or quality of treatment that he would have preferred. But "[m]ere disagreement as to the proper medical treatment" is insufficient to establish that the AHN employees acted in violation of a constitutionally protected right. Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987); see Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (noting that claims of medical malpractice or negligence do not constitute deliberate indifference). Nor do Ginyard's allegations state a claim against AHN itself. The complaint did not state sufficient facts to support a causal connection between the claimed constitutional violation and the location where Ginyard received health care

8

services.[4]  See Natale, 318 F.3d at 582-84.

The District Court also properly granted summary judgment to defendants Del-Prete and Williams.  The evidence presented to the District Court showed that, in August 2020, Ginyard informed Del-Prete of the perceived inadequacies in the medical care he was receiving.  In response, Del-Prete instructed Ginyard to submit a sick call request with Del-Prete's name on the slip.  Shortly thereafter, Ginyard was seen by AHN's CRNP.  Although Ginyard disagreed with the care provided by the healthcare staff and conveyed to Del-Prete his own belief that his need for a1c testing was more emergent than his medical providers implied, the fact remains that he was under the consistent care of medical staff.  See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.").  And, the record does not support, nor does Ginyard allege, any further communication with Del-Prete or any other basis from which to infer that Del-Prete was aware of and intentionally disregarded a continued failure by medical staff to assess and treat Ginyard's medical needs.  See id. ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants

[4] For this same reason, absent any objective evidence that the clinic services provision of the ACJ COVID-19 mitigation policy impeded the provision of medical care to Ginyard, or that it created any unreasonable risk of harm to him, the District Court properly entered judgment in favor of Defendants Del-Prete and Williams to the extent Ginyard claimed supervisory liability in relation to the promulgation and maintenance of the policy.  See Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) (noting the elements of a supervisor liability claim in relation to the implementation of a policy or practice).

are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.").

Ginyard's deliberate indifference claim against Williams fares no better. The evidence of record indicates that Ginyard sent two request slips to Williams requesting medical treatment for severe pain and explaining that he had submitted several sick call requests but had not yet received a1c testing to determine the cause of the pain. Although it appears that Williams failed to respond directly to Ginyard, the evidence of record indicates that, upon receipt of his correspondence, Williams emailed the provider and directed it to prioritize Ginyard's lab work. The testing was completed within a week of Williams's email to the provider, and slightly over a month after Ginyard's first correspondence to Williams. Construing, as we must, all inferences in favor of Ginyard, no reasonable factfinder could conclude that Williams acted with deliberate indifference. See Rouse, 182 F.3d at 197 (describing circumstances that support a finding of deliberate indifference, "including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment").

Accordingly, we will summarily affirm the judgment of the District Court.